I just want to address first a few brief comments to the question of the 30-level cap that we raise. And the government attempts to justify the fact that this 30-level cap applies only to minor role participants in narcotics offenses, but not to minor role participants in listed chemical offenses based on the fact that there are certain upward adjustments that would apply to narcotics offenders, but not to listed chemical offenders. And in addition, there is a statutory mandatory minimums that apply in some cases to narcotics offenders, but not to listed chemical offenders. And I'll just point out to the Court that these additional adjustments that would apply to narcotics offenders apply in a fairly narrow group of cases, and it doesn't remove the fact that in most instances of a minor role participant. Roberts. Counselor, your argument here is that the sentencing guidelines violate the Equal Protection Clause. Is that correct? Martinez. Correct, Your Honor. Roberts. Okay. Now, in light of Booker, what argument have you got? If the guidelines are now advisory and not mandatory, don't you lose your equal protection argument? Martinez. I don't think so, Your Honor, because the district court is still supposed to come to a conclusion as to what the guideline level is. So the court is still supposed to apply the guidelines. Roberts. And where does that come from? Martinez. That comes from Booker. It's supposed to look at the guidelines, determine what the guidelines are. Roberts. Okay. But they're purely advisory at this point. Martinez. I agree they're purely advisory, although I can assure the Court that in my experience, that advisory is carrying a whole lot of weight with the district court judges. So it would make a big difference in a case like this whether the court was looking at a guideline level of 24, say, which is what the court would be looking at here if the various issues we've raised on this appeal are granted by the court. Roberts. In your view, Counselor, then, is it reversible error if a district court fails to make findings into the guidelines? Martinez. Well, I think it's reversible error to fail to give this defendant the benefit of this 30-level cap and take that as the starting point in the court's analysis of what the sentence should be. So if the court's going to give an advisory opinion, but it's supposed to give great weight to the guidelines, and he's starting at 35 instead of 24, then that makes a huge difference in where the court's likely to come out. My problem, Counselor, is still understanding how we have an equal protection problem on something that's advisory. Martinez. Well, Your Honor, I'd be glad to throw the guidelines out altogether. But if the courts – if the district courts are required to give weight to the guidelines, then … Kennedy. They're required to look at the guidelines. Where does it say they're required to give weight to the guidelines? Martinez. They're required – I don't remember exactly how the court articulates that. Kennedy. They're required to follow them. They're there. And they bow to them for – this is Judge Real. He'll bow to them for about one-fiftieth of a second, and then he'll get you sent. So they're not – they're just advisory. And the judge doesn't have to follow them. And you can just exercise his discretion within the reasonable limits. Roberts. Counselor, you've got – you've got an Ammaline remand. You're entitled to an Ammaline remand here, aren't you? Martinez. Yes, I am. Roberts. Okay. So you're going to get another shot at the judge anyway? Martinez. Correct, Your Honor. Roberts. Okay. Martinez. I'd certainly rather get that shot, though, with some word from this court that that 30-level cap under the guidelines should apply to this defendant. I mean, I can certainly make that argument to the court, and I made it before. And when the guidelines were mandatory, the judge rejected it. I think I'm a little bit farther ahead if Judge Real knows that in this Court's opinion, that 30-level cap should apply under any rule of fairness or equal protection to this defendant as well as narcotics offenders. Kennedy. Well, you know, this – that equal protection argument is probably somewhat problematical. Martinez. Well, I think equal protection arguments are always problematical, but it's certainly problematical to look at the guidelines and try to figure out how you would justify giving a more serious offender in a narcotics offense the benefit of that cap and not give it to a minor role participant in the somewhat less serious offense of distributing a listed chemical. So that – to me, that, too, is highly problematical. Kennedy. I suppose if you know where to get the ingredients, if you buy them in the market, there's probably an indication there that you're, you know, maybe involved in a – in an operation that puts out a massive amount of forbidden drugs. Martinez. Could be, Your Honor, but someone actually doing the manufacturing – Kennedy. What? Martinez. Someone actually doing the manufacturing under Section 2D1, if it's a minor role, would get the 30-level cap. Kennedy. Yeah, well. Martinez. Counsel, the standard of review under the Equal Protection Clause will be rational basis. Is that right? Kennedy. Yes. Martinez. Okay. And the party that has behaved irrationally here would be the Sentencing Commission, correct? It's not Congress. Kennedy. Well, the Government – Martinez. The Sentencing Commission is the one that drew the distinction between one who's a minor participant for precursor chemicals and one who is a – and one who actually distributed the drugs. Kennedy. True, although everything the Sentencing Commission does is subject to Congress countermeasures. There's nothing in the statute that you're challenging. What you're challenging is it's an equal protection challenge to a guideline enacted by the Sentencing Commission. So it's actually the equal protection violation was committed by the Sentencing Commission, not by Congress. Martinez. In the first instance, yes. Kennedy. Okay. You got any other arguments? Martinez. Just on the hearsay arguments that we raised, Your Honor, just to emphasize to the Court that as far as actual evidence is concerned, there was nothing in this case to show that this defendant had more than a minimal role in this offense consisting of on one day being induced by the son of his landlord to go out and help load some or unload some buckets off of trucks and into a warehouse. He was a forklift operator. He went and he spent a couple hours helping to unload these buckets. A few days later, he's cajoled by his co-defendant into going to the warehouse, counting the buckets, and then taking a call from somebody in Chicago and telling them how many buckets are there. Now, on those facts, it's – there's no indication that he has any specific knowledge of what the substance involved in is, of what the substance is going to be used for, or that he has any monetary stake in this venture whatsoever. Roberts. Did he have a prior conviction? Martinez. He has a prior conviction of street sale of methamphetamine. Roberts. Of meth. Okay. Martinez. Yes. The Government, in effect, tries to create the impression of a much larger role by the four instances of hearsay evidence that are set forth in the brief. And frankly, I find it surprising that a Government lawyer or any lawyer would put that kind of hearsay completely – no foundation whatsoever laid for it, no explanation of where the evidence is coming from, the conclusions are coming from, and put that in the record without, on his own initiative, feeling an obligation, simply a professional obligation to the Court, to set forth what the foundation is. Now, why Judge Reel did not grant our objections to that evidence or permit us to cross-examine the sources of the evidence is beyond me. But when you're talking about giving somebody a 180-month sentence, surely the Court has an obligation, the Government has an obligation, to not rely upon this sort of highly conclusory information. I mean, statements like, there were a bunch of telephone numbers on the defendant's cell phone which are from known drug dealers. We don't know what telephone numbers they're talking about. We don't know how they're concluding that they're known drug dealers. We're supposed to just take at face value the statement of the DEA agent that this is a true statement. So I find it shocking that Judge Reel would let that into the record, that Judge Reel wouldn't look at the Government lawyer and ask him what business he thinks he has, putting that kind of information in the record without providing the foundation. And I don't know why the U.S. Attorney's Office would attempt to color the proceeding and prejudice the Court by putting that kind of clearly inadmissible evidence into the record. Well, when the Court took the plea, he asked your client, and did you know at that time that it was to be used in the manufacture of methamphetamine? The defendant, Guatemala, no. The Court, you did not know that it was to be used? Defendant, Guatemala, yes. Let me ask this question. He says, all right, Mr. Guatemala, did you know what you had in your possession was illegal against the United States law? Defendant, Guatemala, yes. The Court, did you think it was being used for some illegal purpose? Defendant, Guatemala, yes. Was that for drug purposes? Defendant, Guatemala, yes. Yes, I understand, Your Honor. That's after he spoke with you. Yes. First colloquially, and then you spoke to your client, and then he came back. Yes. And there's some important distinctions in the elements of the crime here. It's sufficient for him to be guilty of the crime alleged if he had reasonable cause to believe that there was a listed chemical involved. It's not necessary for him to have had actual knowledge that a listed chemical was involved. And there's a three-point, three-level swing, depending upon whether the Court finds that he had actual knowledge. Depending on whether the government proves he had actual knowledge that this was a chemical that was going to be used to make methamphetamine, as opposed to him having only reasonable knowledge. And this hearsay evidence is very important in whether or not there was enough in the record to draw that inference, whether the government met its proof there. The hearsay evidence is also highly relevant to the question of whether he was guilty of the production for minor role. So when we go back, I certainly will vigorously object again, and I believe the Court should make it clear that that evidence lacking any foundation should never have been offered and should not come in, so that the Court can make an appropriate determination. This was offered as sentencing. Pardon? Offered as sentencing. Yes. Yes. And fully objected to. All right. We'll hear from the prosecution. May I please the Court? Michael Ruffalo on behalf of the United States. Your Honors, in direct answer to Judge Bidey and Judge Krager's questions about the Equal Protection Clause applying today, under today's guidelines, it is the case that there's not even a potential equal protection challenge, because at the Booker stage, at the stage of discretion, defense counsel can make all these arguments that the listed chemical defendants should be given a benefit that narcotics defendants get. Alternatively, the government can make an argument that the benefit should be taken away from narcotics defendants. So because of that discretion at the Booker stage, today there wouldn't even be a sort of potential equal protection. Your argument is that one way that the judge could make them equal is by taking away the minor role for those who possess the drugs to make them equal to those who possess the precursor chemicals. Sure. Or simply without taking away the minor role at the Booker stage, saying now that I've calculated the guideline range, I am going to raise the sentence of this defendant because the scope of his involvement or other things about the case and his background don't warrant this cap. Whichever way the Court gets there, whether it's taking away the minor role at the Booker stage or simply for other reasons. At what point and how could this Court entertain a claim that two different defendants had been treated unfairly, one because he possessed precursor chemicals and one because he possessed drugs, both having a minor role? Your Honor, the defendant would have to show two things. First of all, he'd have to show the class of defendants that he's a member of is treated differently than another class. He can't show that here, as I'll discuss. Secondly, he has to show that that distinction does not have a rational basis. He can't show that either here. Now, the reason that even under the old guidelines he can't show the class of defendants that he's a part of is treated differently is that this is a large-scale possessor of pseudoephedrine. He had the keys to a warehouse with over 8.5 tons of pseudoephedrine. In the 2D1.1 or narcotics context, any large-scale possessor of drugs is subject to mandatory minimums. This defendant, for an equivalent amount of meth or even a much smaller amount of meth, you only need 500 grams of meth to trigger the highest level of mandatory minimums. This class of defendants would have been subject to mandatory minimums under the narcotics regime, and this defendant in particular would have received a 20-year mandatory minimum because he had a prior drug felony. So his class of defendants, large-scale pseudoephedrine possessors, is not, in the overall scheme of things, being treated more harshly than those who possess narcotics, because they – the narcotics has mandatory minimums. The illicit chemical defendants do not. But even – so even if you put that aside – and that argument is that he can't even show the class of defendants he's a member of is treated differently. We make this argument in a certain way in footnote 4 of our brief. There's – there is a rational basis for treating them differently. One part of the rational basis might be that there are these mandatory minimums. So the sentencing commission might not have wanted to give an extra benefit to illicit chemical defendants who already escaped from them. But it would be rational in any event for the commission to target pseudoephedrine and ephedrine possessors in particular. These are the only ones – there are two different illicit chemical tables, and it's only the meth precursor chemicals that one can even get higher than a base offense level of 30. So not giving the cap to illicit chemical defendants targets especially only those meth precursor chemicals. And these – this regime resulted from the Methamphetamine Anti-Proliferation Act of 2000, and it is rational for the commission and Congress to decide to target these defendants in particular. This is sort of analogous to this Court upholding the cocaine crack distinction in the Guidelines. Whether it's good policy or not to target a particular type of drug is rational. And here we have Congress asking the sentencing commission or telling the sentencing commission to target this particular type of drug. So even under the old Guidelines, the defendant can't show either that the class that he's a member of is treated disparately. If anything, the drug defendants because of mandatory minimums are treated more harshly, and he can't show that there's not a rational basis. And is the government's position, Counselor, that there are no longer – it's even possible to have an equal protection claim on its face as a challenge to Guidelines? You're – I don't think so, because at the Booker stage, once the Court has calculated the Guidelines range, in any case I can think of standing here right now, the defendant could make an equal protection-type argument and say, please level things out, because there are other defendants out there who are treated in a more lenient way, and court, in your discretion, please equal things out for me. Because the courts have this discretion to do that, it doesn't seem to me like there could ever be a situation under Booker where there would be an equal protection violation. Now, as an aside, I don't know of any situation where the courts have upheld an equal protection challenge in the form such as the defendant is presenting here, even under the mandatory Guidelines. I mean, the most famous one is the cocaine crack distinction that I believe all the circuits rejected, and in fact, this circuit rejected, any equal protection challenge to that, because, of course, the rational basis standard is a low one. It doesn't mean the court has to agree with the policy, only that there's a rational basis for there being a disparate treatment. And it does strike me that under advisory Guidelines, this form of argument is one that can never be successful. Counsel, does the government concede that the defendant's entitled to an amyline remand here? Yes, Your Honor, but not quite for what the defendant has articulated. There should be an amyline remand if the defendant is asking for one on the very common ground now that the district court applied mandatory Guidelines rather than advisory Guidelines, and the district court should answer the question whether now that the district court knows that the Guidelines are advisory, would the court have sentenced in a materially different way. That's the basis for an amyline remand. There is not a basis for a remand for any other reason. Everything else the court did here was correct. Specifically, the portion of the transcript that Judge Pragerson read at Excerpt of Record 27 is defendant acknowledging at his plea colloquy that he knew that the pseudoephedrine that he possessed was being used for some illegal purpose, and that was for a drug purpose. So the enhancement that was applied for that reason was not applied in error. You know, putting aside the fact that the defendant had keyed into a warehouse with 8.5 tons of methamphetamine, putting aside the fact that he had two prior meth convictions, one in 1997, one in 1998, so any argument that he didn't know that the pseudoephedrine was going to be used to make meth is a strange one at best, he did admit to knowing that at his plea colloquy. So there wasn't any error in that way. And let me mention on this hearsay argument, which, by the way, the defendant has waived in his plea agreement at Excerpt of Record 13, where he waives all non-constitutional claims. Putting that aside, hearsay, of course, is used at every sentencing hearing. It's specifically allowed under Federal Rule of Eminence. A lot of those agreements, you know, were signed because the prosecution had a hammer on the head of these people, and so, you know, they would just sign everything away, not knowing that down the road the discretion would be restored to the trial judge. Right. Well, Your Honor, the plea waiver has been held to be a jurisdictional one that we can't waive, even though we didn't even mention this in our brief. But even if you throw away the plea waiver, which there's no reason to disregard, there's nothing that indicates that it was coercive in the way the Court says. Oh, no, it's inherently coercive. Okay. But even if one ignores the fact that defendants waived that third claim, every sentencing includes hearsay. And when defense counsel objects to the hearsay, it's not an objection that a court would ever have a basis for throwing it. Now, a court could give less weight to the hearsay and, for whatever reason, say the PSR-24, a co-conspirator named Molino, said that the defendant controlled the distribution of the pseudofedrin. At PSR paragraph 26, it says the defendant had keys to the warehouse with 8.5 tons of pseudofedrin. PSR-29, defendants lied to the agents initially when he was arrested. PSR-40, the head of the conspiracy, Shabib, said that he discussed and called the defendant about distributing the methamphetamine. Then we have the declaration from the agent Kramer that says he analyzed the defendant's phone records. You know, defense counsel's objection or his comment could be well taken to the court. Give one of these statements less weight, he can make that argument. But it's his burden to establish minor role and minimal role. He's the one who has that burden. He's arguing for a minus 4 for minimal role here, even though I don't believe he put in any evidence. Certainly, defendant didn't make statements and tell the court. Your Honor, my time is almost up. Can I just conclude this thought? Did he have a right to cross-examine the Kramer, the agent? He didn't ask to cross-examine Kramer, the agent. He could — it would be perfectly fair for him to make an argument to the court saying, Your Honor, please give this less weight. I would say — he could say, I would like to cross-examine Agent Kramer, and, Your Honor, if you don't let me do that, if the government doesn't possess him, I argue to you, Your Honor, that you should give Kramer's testimony or his declaration less weight, because I haven't been able to cross-examine him. But because under Rule 1101, hearsay is admissible and, in fact, comes in all the time at sentencing, defendants submit it all the time, letters from their friends and their, you know, sometimes statements from themselves written out where they can't be cross-examined. It's not an objection to the admissibility, as defense counsels have said, to the evidence. It's an objection to its weight. And here, there was ample weight for the — and ample evidence for the court to apply no role reduction at all. Instead, the Court said, I'm giving the defendant the benefit of the doubt, and I'm applying a two-level reduction for minor role, not going so far as to apply a minus four for minimal role. But even though defendants submitted no evidence of his own, I believe, certainly very little, the Court nevertheless reduced the sentence by two levels for minor role. And so there's no argument here that his decision not to go further and find that defendant had satisfied his burden for four levels for minimal role was somehow unsupported. With that, Your Honor, I will submit, unless the Court has any further questions. I'm glad to answer them. Roberts. Thank you, Your Honor. Just to say first, Your Honor, that we did very expressly ask to cross-examine the hearsay witnesses, and anyone who's been in front of Judge Reel knows how quickly those sorts of requests can be denied in a very summary fashion, and that's what happened here. So we were deprived of that right. And I do believe the case law holds that hearsay, although hearsay is frequently admitted at sentencing, there's no doubt about that, that there has to be a certain level of reliability to it before it can be admitted. And furthermore, the defendant may have the burden of proof on the question of a downward adjustment for role, but that doesn't mean the defendant has to take the stand. He's entitled to take the state of the record, the state of the evidence that's in the record, and point to that as showing that his role was minor or minimal without having to put on an affirmative showing. I think that's all pretty well accepted and is the way these things are done. So I would also just like to point out to the Court that Judge Reel justified finding that the defendant had actual knowledge of pseudoephedrine and that it would be used to make methamphetamine based solely upon his comment at the sentencing was that the defendant's conviction for street sales of pseudoephedrine supports that finding. Now, I disagree with that entirely. A street sale of pseudoephedrine does not mean that he knew how pseudoephedrine was made or what it was made from any more than the fact that I buy tires says that I know the chemical processes and substances involved in making tires. A person can certainly be involved in street sales of drugs without knowing what the manufacturing process is. But he didn't need to know what the manufacturing process was to know that he had something that was hot. Precisely, and that's why he's guilty of this offense. But there's three levels. It depends upon whether the government establishes that he not only knew there was some sort of illegal substance here, but he knew it was pseudoephedrine and he knew it was going to be used to make methamphetamine. But he can know that without knowing how it's done. All he has to know is that it's going to be done, not the chemical process involved. Well, you know you got tires. You don't know how they were made, but you know you got tires. He knew there was going to be meth coming out of it. Right. But the fact that he's selling it on the street doesn't mean that he knows that it came out of pseudoephedrine. That's my point. You're still at a neutral place there. He can know it's pseudoephedrine. All he knows is he's got something hot and it's going to be turning into something even hotter. Correct. And that's enough to justify the sentence. Well, I don't think that's the way the guideline reads or the statute reads. I think the court, in order to add those three extra points for actual knowledge, there has to be proof that he knew that this substance, you're correct, he doesn't have to know the chemical name. He knew it was hot and he knew it was going to be hotter. That's all he has to know. And he knew it was going to be used to make methamphetamine or some narcotic drug. And the mere fact that he in the past has a conviction for street sales of pseudoephedrine, not street sales of pseudoephedrine, street sales of methamphetamine, does not tell us, does not prove that in this instance or at any time in his life, he knew that pseudoephedrine is what is used to make methamphetamine or that he knew that what was in these buckets that were sealed was going to be used to make methamphetamine or cocaine or whatever. That's my point. And that's all Judge Rehl was relying upon, and I submit that's an insufficient evidentiary basis. Thank you, Your Honor. Thank you very much. And the matter will stand submitted.
judges: Pregerson, Clifton, Bybee